Stone Motor Company v. Commissioner.
Stone Motor Co. v. Commissioner
Docket No. 54946.
United States Tax Court
T.C. Memo 1956-179; 1956 Tax Ct. Memo LEXIS 112; 15 T.C.M. (CCH) 944; T.C.M. (RIA) 56179; July 31, 1956
*112 1. Held, petitioner failed to prove that the Commissioner erred in disallowing a loss from a transfer of assets for stock of the petitioner. 2. Held, petitioner failed to prove that the Commissioner erred in disallowing certain deductions for travel expenses. 3. Held, petitioner who in 1948 paid sales and use taxes and penalties which accrued to its predecessor prior to October 1, 1947, may not deduct these items in 1948 under section 23(c) of the Internal Revenue Code of 1939. Ernest B. Graham, Esq., Citizens National Bank Building, Zanesville, Ohio, and James F. Graham, Esq., for the petitioner. Robert E. Johnson, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in the income *113 tax of petitioner as follows: Year
Deficiency
10/1/47 to 12/31/47
$ 265.47
1948
3,900.06
1950
10,642.71
1951
1,215.77 Several minor adjustments made by the Commissioner in the reported net income of the petitioner for the years involved were not contested by the petitioner. The three issues remaining to be decided involve the following: (1) the disallowance of a deduction for loss on the sale of other than capital assets in the amount of $44,046.60 in the year 1951; (2) the disallowance of deductions for travel expenses in the amount of $562.65 for the period October 1, 1947 to December 31, 1947, $2,537.25 for the year 1948, and $2,604.43 for the year 1949; and (3) the disallowance of deductions for the payment of sales tax deficiencies and penalties in the amount of $1,889.95 and $283.49, respectively, for the year 1948. Findings of Fact The petitioner is an Ohio corporation with its principal office at Zanesville, Ohio. It kept its books on an accrual basis and filed its tax returns for all periods in question with the collector of internal revenue for the eleventh district of Ohio. Prior to October 1, 1947, Baxter M. Stone and Fred R. Beasley were *114 engaged as partners in the business of selling new and used automobiles in the City of Coshocton, Ohio, operating with a Ford Motor Company franchise. On October 1, 1947, the petitioner, the Stone Motor Company, was incorporated with 500 shares of authorized common stock without par value. Stone and Beasley each took 250 shares of the stock in exchange for the net assets of their former partnership. The following restrictive provision appeared on Beasley's stock certificate: "The shares represented by this Certificate cannot be sold, pledged, assigned or transferred except in accordance with the provisions of an agreement between the sole shareholders, F. R. Beasley and Baxter M. Stone, dated January 15, 1948, and in case of the death of either, or should either desire to sell such shares, then the same are subject to an exclusive option of the other shareholder to purchase such shares at book value in accordance with the terms of said agreement, which is by reference incorporated as though rewritten herein." In July of 1947, a building on leased property at 118 So. Fourth St., Coshocton, Ohio, was completed by Stone and Beasley. Title to the building was taken in their business *115 name of Stone Motor Company. The building was entered on the books of the petitioner, as costing $170,101.14 and was depreciated for federal income tax purposes at the rate of 4 per cent per year. On April 9, 1951, Beasley wrote the following letter to the petitioner, for the attention of Stone: "Dear Baxter: "After our conference the other day, I have given the Coshocton situation serious consideration and have decided that it is advisable for you and I to part company as far as business is concerned, for the very simple reason that we disagree too often. "There is no doubt that we made a great mistake when we built the expensive building, but of course it cost us far more than we anticipated, and then, we were badly advised as to the rate of depreciation. "When I view this matter from an overall picture I realize that we are going to take a substantial loss as to the building regardless of what we do, and unless we settle our differences on an amicable basis we will realize less than our original investment. If the franchise was removed from the real estate, I doubt if it could be sold for a cent more than $120,000. In fact, I wouldn't purchase it at that figure if I wasn't *116 already involved in the deal. "Now, in order to bring this matter to a conclusion, I am submitting two propositions: "1. (a) Pay all indebtedness the company owes me or any member of my family. "(b) Corporation is to immediately relieve myself and any member of my family from any obligation that we have guaranteed or secured on behalf of the company. "(c) Purchase my stock for $30,000. "2. (a) Company to purchase the ground upon which the building is located and convey to me title to all the real estate the company is now using upon the basis of $135,000, which I will pay by the following method: "(1) I will assume the note at the Coshocton National Bank, which has an approximate balance due of $69,000. "(2) Cancel the note held by me personally against the company, plus accrued interest. "(3) Pay $5,000 in cash. "(4) Surrender my stock to the company. "(5) Corporation is to immediately relieve myself and any member of my family from any obligation that we have guaranteed or secured on behalf of the company. "(6) The company will enter into a lease for the real estate for a term of not less than five years, preferably ten, at a monthly rental of $1,000 per month, *117 payable in advance, and the company is to pay the taxes, keep the property insured, and maintain same. "I will give you until April 25 to accept either of the propositions or make me a counter proposition. "If you consider either of the above propositions, I request that the deal be consummated as of April 30, 1951, and that you complete the transaction as soon after April 30 as you can arrange your financing." Proposition No. 2 of the above letter was accepted by Stone in behalf of the petitioner prior to May 1, 1951, subject to the petitioner's being able to finance the transaction and subject to a confirmation of the Board of Directors of petitioner. At a meeting of the Board of Directors held September 7, 1951, the above action of its President was confirmed and ratified. On or about April 30, 1951, Beasley turned his stock certificate back to the petitioner. It was cancelled and a certificate for 250 treasury shares was substituted for it. The treasury shares were entered on petitioner's books as costing $30,000. On September 10, 1951, Beasley received title to the land and building in compliance with the agreement. Part of the land had been purchased on October 1, 1947 and *118 the rest of it on September 1, 1951. It was entered on the petitioner's books as costing $15,000 and $20,000, respectively. Petitioner in its income tax return for the taxable year 1951 claimed a deduction for a loss from sale or exchange of property other than a capital asset, as follows: Gross sales price
$135,000.00
Less cost or other basis
Land
$ 15,000.00
Land
20,000.00
Building and Fixtures
$170,101.12
Less depreciation al-
lowed or allowable
26,054.52
144,046.60
179,046.60
Loss on sale
$ 44,046.60
The return for 1951 showed petitioner's capital stock as reduced from $50,000 to $20,623.04 and surplus and undivided profits reduced from $43,183.56 to $3,143.71. Petitioner in its income tax return for the taxable years October 31, 1947 to December 31, 1947, 1948 and 1949, claimed deductions for "Travel Expenses" in the amounts of $1,125.30, $5,064.51 and $5,208.87, respectively. Petitioner in its income tax return for the taxable year 1948 claimed a deduction for "Sales Tax Assessment" in the amount of $3,381.17. $1,889.95 represented deficiencies in Ohio State sales and use taxes prior to October 1, 1947 and $283.49 represented *119 penalty on those deficiencies. The petitioner's adjusted basis in the land and buildings transferred to Beasley on September 10, 1951, was not more than $135,000. The Commissioner allowed travel expenses for the taxable years October 1, 1947 to December 31, 1947, 1948 and 1949, in the amounts of $562.65, $2,527.26, and $2,604.44, respectively. Opinion TIETJENS, Judge: The Commissioner disallowed the petitioner's claimed loss of $44,046.60 resulting from the transaction in which Beasley acquired title to the land and building in 1951. This disallowance is based on two alternative grounds. First, that the petitioner's adjusted basis in the property at the date of its transfer did not exceed the amount received in exchange for it, and second, that no gain or loss resulted to the petitioner from the transaction since it was merely a distribution in kind in partial liquidation. The Commissioner's determination against deductibility has the support of a presumption of correctness and the petitioner has the burden of proving it to be wrong. Welch v. Helvering, 290 U.S. 111 (1933). The only evidence produced by the petitioner to show that its original cost in the building *120 was $170,101.14 was the testimony of Stone and Beasley, the two former partners and stockholders of the Stone Motor Company. Stone testified that the cost of the building was "Somewhere in the neighborhood of $170,000 to $175,000." He said that the building was constructed under his supervision, that he provided the materials and various contractors provided labor on a cost-plus basis. The reason for this he asserted was that materials were unavailable and thus no one contractor would take the contract to erect the building and furnish materials. Stone further testified that in order to obtain materials "we had to pay the top price, beyond the top price, just whatever they asked for it, and in addition to that, to even get them to even consider giving it to you, you had to come up with some new automobiles, which were very valuable back in those years." When asked the cost of the building, Beasley testified, "I think $170,000 or something like that." No records of payments for materials, labor, or any other cost were presented to substantiate this testimony. Not a single invoice was produced, nor any records of third parties who furnished work or materials. There was no evidence of *121 any kind to substantiate the alleged cost of $35,000 for the land transferred by the petitioner to Beasley. A taxpayer must support a claimed deduction by proof, as reasonably definite as is possible in the circumstances, of the nature and details of the expenditures said to have been made. Rugel v. Commissioner, 127 Fed. (2d) 393, 395 (C.A. 8, 1942). The petitioner has not sustained the burden of showing that the adjusted basis of the land and building transferred to Beasley in 1951 was more than $135,000. Under such circumstances we cannot determine that a loss was sustained by the petitioner, and therefore we must affirm the Commissioner's determination. Since the petitioner has failed to show that it incurred a loss in the transfer of its land and building to Beasley in 1951, it is unnecessary for us to decide whether the transaction was one in which no gain or loss need be recognized. The petitioner claimed deductions for travel expenses for the period October 1, 1947 to December 31, 1947 in the amount of $1,125.30. The Commissioner allowed $562.65 and disallowed the balance for lack of substantiation. The only evidence presented by the petitioner was the testimony *122 of Baxter Stone who said that the expenditures were for regular promotion and travel that was necessary in conducting the business and that, "I think I spent most of it." No documentary evidence of any kind was produced by petitioner to substantiate his position. We hold that the Commissioner did not err in disallowing one-half of the claimed travel expenses. Similar deductions of $5,064.51 and $5,208.87 were claimed in the years 1948 and 1949, respectively, and again the Commissioner disallowed the claims to the extent of $2,537.25 and $2,604.43, respectively, for lack of substantiation. When asked who made the claimed expenditures, Stone testified, "Well, I guess I did, mostly. There might have been some other salesman and so forth connected in with that, but I think that I handled most of it, at least I paid the bills." Stone further testified that the expenditures were for obtaining automobiles; that he and other salesmen made trips to Detroit, Cleveland and Miami to obtain used automobiles which they brought back to Coshocton and sold; and that he made trips once or twice a week to see officials of the Ford Motor Company for the purpose of obtaining new cars during those years. *123 The petitioner produced no documentary evidence but argues that the amounts deducted were not excessive or unreasonable and should be allowed in their entirety. The petitioner's evidence falls short of establishing expenditures in excess of the $2,527.26 and $2,604.44 which the Commissioner allowed for 1948 and 1949, respectively. We have no choice but to affirm the Commissioner on this point. The petitioner, on its income tax return for the year 1948 deducted $3,381.17 for "Sales Tax Assessment." The Commissioner disallowed $1,889.95 of the deduction since it represented deficiencies in state sales tax and use tax for the period prior to petitioner's incorporation. He also disallowed $409.95 in penalty, of which $126.46 is conceded to be non-deductible since it represents a penalty on sales and use tax for the period after petitioner's incorporation. The petitioner argues that it assumed the liabilities of the partnership, that sales tax is deductible if "paid or accrued in the taxable year," that it paid the assessment in 1948, and therefore it should be allowed a deduction for this item. Taxes are deductible under section 23(c) only by the person upon whom they are imposed. *124 Here the taxes in dispute were imposed upon the partnership and not upon the petitioner. The fact that petitioner is a successor to the partnership is of no consequence in this respect. Merchants Bank Building Co. v. Helvering, 84 Fed. (2d) 478 (C.A. 8, 1936). The payment of the taxes of the predecessor partnership is a part of the corporation's capital investment in the assets acquired, but is not a deductible expense. Decision will be entered for the respondent.